UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| MELISSA BARRON, DAVID BERNSTEIN, TENISHA BURGOS, KENT BUSEK, JENNIFER CHASE, NATHAN CROOM, LORI CURTIS, JESSICA DECASTRO, ALENA FARRELL, JANE FITZGERALD, JASON GRALA, PAUL GUSTAFSON, TOM HALVERSON, JOHN HOLLINGSWORTH, CAROL ANN KASHISHIAN, ROBERT KLINGER, JAMES MAREAN, ELLIS WINTON MCINNIS, NILSA MERCADO, REBECCA LYNN MORROW, EDWARD MUSCARA, STACEY NICKELL, SOPHIE O'KEEFE-ZELMAN, ROGER OLSON, WILLIAM PICOTTE, JESSE POWELL, LAUREN PRIMOS, CINDY PRINCE, VIRGINIA PUERINGER, JANNE RICE, ROBERT RICE, JR., FRANCES GAMMELL-ROACH, DARREL SENIOR, MEETESH SHAH, DARCY SHERMAN, ERICA SHOAF, RICHARD STOEHR, ARTHUR STUKEY, KATHLEEN TAWNEY, MICHAEL TRACY, KEITH UEHARA, MICHAEL WICK, THOMAS WILSON, PHILLIP YOUNG, on Behalf of Themselves and all Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| YAMASHITA RUBBER CO., LTD., YUSA CORPORATION, TOKAI RUBBER INDUSTRIES, LTD., DTR INDUSTRIES, INC., | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

Plaintiffs Melissa Barron, David Bernstein, Tenisha Burgos, Kent Busek, Jennifer Chase, Nathan Croom, Lori Curtis, Jessica Decastro, Alena Farrell, Jane Fitzgerald, Jason Grala, Paul Gustafson, Tom Halverson, John Hollingsworth, Carol Ann Kashishian, Robert Klinger, James Marean, Ellis Winton McInnis, Nilsa Mercado, Rebecca Lynn Morrow, Edward Muscara, Stacey Nickell, Sophie O'Keefe-Zelman, Roger Olson, William Picotte, Jesse Powell, Lauren Primos, Cindy Prince, Virginia Pueringer, Janne Rice, Robert Jr. Rice, Frances Gammell-Roach, Darrel Senior, Meetesh Shah, Darcy Sherman, Erica Shoaf, Richard Stoehr, Arthur Stukey, Kathleen Tawney,  Michael Tracy, Keith Uehara, Michael Wick, Thomas Wilson and Phillip Young ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment, allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants, manufacturers and suppliers of Anti-Vibration Rubber Parts (defined below) globally and in the United States, for engaging in a massive, long-running conspiracy to unlawfully fix and artificially raise the prices of these products.  Defendants' conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and consumers alike.

2.      Plaintiffs seek to represent all persons and entities who purchased or leased new motor vehicles containing Anti-Vibration Rubber Parts during the period from and

including October 1, 2005 through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class Period").

3. "Anti-Vibration Rubber Parts" are comprised primarily of rubber and metal, and are installed in automobiles to reduce engine and road vibration. Anti-Vibration Rubber Parts are installed in suspension systems and engine mounts, as well as other parts of an automobile.

4. Defendants Yamashita Rubber Co., Ltd., YUSA Corporation, Tokai Rubber Industries, Ltd., and DTR Industries, Inc. (all as defined below, and collectively "Defendants") manufacture, market, and sell Anti-Vibration Rubber Parts throughout the United States.

5. Competition authorities in the United States and Japan and possibly elsewhere, have been investigating a conspiracy in the market for Anti-Vibration Rubber Parts since at least October 2011. This investigation is part of an ongoing investigation by the Antitrust Division of the Department of Justice ("DOJ") into price fixing and bid rigging in the auto parts industry. The DOJ's auto parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct. The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded more than $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

6. On November 1, 2012, the DOJ announced that Hiroshi Yoshida, a Japanese national employed at the Ohio-based U.S. subsidiary of an automobile Anti-Vibration Rubber Parts supplier headquartered in Japan, pleaded guilty for his role in a conspiracy to fix prices

and rig bids of Anti-Vibration Rubber Parts sold in the United States and elsewhere.  Upon information and belief, Mr. Yoshida is employed by YUSA Corporation, a wholly-owned subsidiary of Yamashita Rubber Co., Ltd.  According to the one-count felony charge filed on October 30, 2012, in the United States District Court for the Northern District of Ohio, Mr. Yoshida and his co-conspirators carried out the conspiracy by agreeing, in meetings and discussions, to allocate the supply of certain automobile Anti-Vibration Rubber Parts, to exchange prices, to submit noncompetitive bids and to sell the parts at collusive and noncompetitive prices in the United States and elsewhere.  Mr. Yoshida has agreed to serve 12 months and one day in a United States prison, to pay a $20,000 criminal fine and to cooperate with the Department's ongoing investigation.

7.      Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Anti-Vibration Rubber Parts sold to automobile manufacturers and others in the United States.  The combination and conspiracy engaged in by Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 and state antitrust, unfair competition, and consumer protection laws.

8.      As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Anti-Vibration Rubber Parts during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

9.      Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the

Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages and secure other relief against Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

10. This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.

11. This Court also has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. § 1332(d), in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

12. This Court also has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because they are so related to the claims asserted in this action over which the court has original jurisdiction that they form part of the same case or controversy.

13. Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

14.    This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Anti-Vibration Rubber Parts throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

15.    Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16.    The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.  Defendants' products are sold in the flow of interstate commerce.

17.    Anti-Vibration Rubber Parts manufactured abroad by Defendants and sold for use in automobiles either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  To the extent any Anti-Vibration Rubber Parts are purchased in the United States, and such Anti-Vibration Rubber Parts do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period,

6

had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce.  The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

18.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.  Defendants, directly and through their agents, engaged in a conspiracy affecting all states, to fix or inflate prices of Anti-Vibration Rubber Parts, which unreasonably restrained trade and adversely affected the market for Anti-Vibration Rubber Parts.

19.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Anti-Vibration Rubber Parts for personal use and not for resale, including Plaintiffs and members of the Classes.

## PARTIES

### Plaintiffs

20.     Plaintiff Melissa Barron is an Oakland, California resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

21.     Plaintiff David Bernstein is a Minnetonka, Minnesota resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

22.     Plaintiff Tenisha Burgos is a Bronx, New York resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

23.     Plaintiff Kent Busek is a North Dakota resident who purchased Anti-vibration Rubber Parts indirectly from one or more Defendants.

24.     Plaintiff Jennifer Chase is a Waterloo, Iowa resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

25.     Plaintiff Nathan Croom is an Omaha, Nebraska resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

26.     Plaintiff Lori Curtis is a St. Louis, Missouri resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

27.     Plaintiff Jessica DeCastro is a St. Louis, Missouri resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

28.     Plaintiff Alena Farrell is a South Burlington, Vermont resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

29.     Plaintiff Jane Fitzgerald is a Milton, Vermont resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

30.     Plaintiff Jason Grala is a Holbrook, New York resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

31.     Plaintiff Paul Gustafson is a Milwaukie, Oregon resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

32.     Plaintiff Tom Halverson is a resident of Arizona, who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

33.     Plaintiff John Hollingsworth is a Saratoga, California resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

34.     Plaintiff Carol Ann Kashishian is a Milwaukee, Wisconsin  who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

35.     Plaintiff Robert Klinger is a Manchester, Missouri resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

36.     Plaintiff James Marean is a Westbrook, Maine resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

37.     Plaintiff Ellis Winton McInnis is a Flowood, Mississippi resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

38.     Plaintiff Nilsa Mercado is a Waterford, Michigan resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

39.     Plaintiff Rebecca Lynn Morrow is a Glendale, Arizona resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

40.     Plaintiff Edward Muscara is a Manchester, New Hampshire resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

41.     Plaintiff Stacey Nickell is a Beckley, West Virginia resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

42.     Plaintiff Sophie O'Keefe-Zelman is a resident of Phoenix, Arizona who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

43.     Plaintiff Roger Olson is a South Haven, Michigan resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

44.     Plaintiff William Picotte is a former South Dakota resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

45.     Plaintiff Jesse Powell is a Lehi, Utah resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

46.      Plaintiff Lauren Primos is a Flowood, Mississippi resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

47.      Plaintiff Cindy Prince is a Langlois, Oregon resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

48.      Plaintiff Virginia Pueringer is a Billings, Montana resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

49.      Plaintiff Janne Rice is a Kenova, West Virginia resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

50.      Plaintiff Robert Rice, Jr. is a Kenova, West Virginia resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

51.      Plaintiff Frances Gammell-Roach is a Warwick, Rhode Island resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

52.      Plaintiff Darrel Senior is a Lenexa,  Kansas resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

53.      Plaintiff Meetesh Shah is a Daly City, California resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

54.      Plaintiff Darcy Sherman is a Minneapolis, Minnesota resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

55.      Plaintiff Erica Shoaf is a Phoenix,  Arizona resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

56.      Plaintiff Richard Stoehr is a Henderson, Nevada resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

57.     Plaintiff Arthur Stukey is a Montpelier, Vermont resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

58.     Plaintiff Kathleen Tawney is a Charlotte, North Carolina resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

59.     Plaintiff Michael Tracy is a Pensacola, Florida resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

60.     Plaintiff Keith Uehara is a Waipahu, Hawaii resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

61.     Plaintiff Michael Wick is a Rio Rancho, New Mexico resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

62.     Plaintiff Thomas Wilson is a Tupelo, Mississippi resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

63.     Plaintiff Phillip Young is an Aqua, Tennessee resident who purchased Anti-Vibration Rubber Parts indirectly from one or more Defendants.

**Defendants**

64.     Defendant Yamashita Rubber Co., Ltd. ("Yamashita") is a Japanese corporation with its principal place of business in Saitama, Japan.  Yamashita – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Anti-Vibration Rubber Parts that were purchased throughout the United States, including in this District, during the Class Period.

65.     Defendant YUSA Corporation ("YUSA") is an Ohio corporation with its principal place of business in Washington Court House, Ohio.  It is a subsidiary of and wholly owned and/or controlled by its parent, Yamashita.  YUSA manufactured, marketed and/or

sold Anti-Vibration Rubber Parts that were purchased throughout the United States, including in this District, during the Class Period.

66.     Yamashita Rubber Co., Ltd and YUSA Corporation shall be referred to together herein as the "Yamashita Defendants" or "Yamashita."

67.     Defendant Tokai Rubber Industries, Ltd. ("Tokai Industries") is a Japanese corporation with its principal place of business in Aichi, Japan.  Tokai Industries – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Anti-Vibration Rubber Parts that were purchased throughout the United States, including in this District, during the Class Period.

68.     Defendant DTR Industries, Inc. ("DTR") is an Ohio corporation with its principal place of business in Bluffton, Ohio.  It is a subsidiary of and wholly owned and/or controlled by its parent, Tokai.  DTR manufactured, marketed, and/or sold Anti-Vibration Rubber Parts that were purchased throughout the United States, including in this District, during the Class Period.

69.     Tokai Rubber Industries, Ltd. and  DTR Industries, Inc. shall be referred to together herein as the "Tokai Defendants" or "Tokai."

## AGENTS AND CO-CONSPIRATORS

70.     Each Defendant acted as the principal of or agent for other Defendants with respect to the acts, violations, and common course of conduct alleged.

71.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses

alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

72.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.     The Anti-Vibration Rubber Parts Industry

73.     Anti-Vibration Rubber Parts are comprised primarily of rubber and metal, and are installed in automobiles to reduce engine and road vibration.  Anti-Vibration Rubber Parts are installed in suspension systems and engine mounts, as well as other parts of automobiles. *See* Figure 1.



Figure 1.

74.     Anti-Vibration Rubber Parts are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed in cars to replace worn out, defective or damaged Anti-Vibration Rubber Parts.

75.     For new cars, the OEMs—mostly large automotive manufacturers such as Honda, Toyota, Volvo, and General Motors—purchase Anti-Vibration Rubber Parts directly from Defendants.  Anti-Vibration Rubber Parts may also be purchased by component manufacturers who then supply such systems to OEMs.  These component manufacturers are also called "Tier 1 Manufacturers" in the industry.  Tier 1 Manufacturers supply Anti-Vibration Rubber Parts directly to an OEM.

76.     Anti-Vibration Rubber parts are typically custom-designed to fit specific automobiles, and are developed over a year in advance of an automobile model entering the

market.  Before ordering Anti-Vibration Rubber Parts for a new model, OEMs – mostly large automotive manufacturers such as Honda, Toyota, Volvo and General Motors – typically request pricing from suppliers, such as Defendants, through  Requests for Quotation ("RFQ"). Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for four to six years.  Japanese OEMs procure parts for U.S.-manufactured vehicles both in Japan and in the United States.

77.     Defendants and their co-conspirators supplied Anti-Vibration Rubber Parts to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. Defendants and their co-conspirators manufactured Anti-Vibration Rubber Parts (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

78.     Plaintiffs and members of the proposed Classes purchased Anti-Vibration Rubber Parts indirectly from one or more of the Defendants.  By way of example, an owner of a vehicle may indirectly purchase Anti-Vibration Rubber Parts from Defendants as part of purchasing or leasing a new vehicle.  An owner of a vehicle may also indirectly purchase replacement Anti-Vibration Rubber Parts from Defendants when repairing a damaged vehicle or where the vehicle's Anti-Vibration Rubber Parts are defective.

**B.     The Structure and Characteristics of the Anti-Vibration Rubber Parts Market Render the Conspiracy More Plausible**

79.     The structure and other characteristics of the Anti-Vibration Rubber Parts market in the United States are conducive to a price-fixing agreement, and have made

collusion particularly attractive in this market.  Specifically, the Anti-Vibration Rubber Parts market: (1) has high barriers to entry; and (2) has inelasticity of demand.

### 1.    The Anti-Vibration Rubber Parts Market Has High Barriers to Entry

80.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

81.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Anti-Vibration Rubber Parts market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-standing customer relationships.

82.    Tokai also owns several patents for Anti-Vibration Rubber Parts.  These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2.    There is Inelasticity of Demand for Anti-Vibration Rubber Parts

83.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

84.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in

declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

85.     Demand for Anti-Vibration Rubber Parts is highly inelastic because there are no close substitutes for these products.  In addition, customers must purchase Anti-Vibration Rubber Parts as an essential part of a vehicle, even if the prices are kept at a supra-competitive level.

C.     **Government Investigations**

86.      A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of automotive parts in general, and Anti-Vibration Rubber Parts in particular.

87.     The DOJ Antitrust Division's broad criminal investigation into illegal price fixing and bid rigging in the auto parts industry is the largest criminal investigation the Antitrust Division has ever pursued.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded over $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

88.     On February 15, 2013, Scott Hammond, the deputy assistant attorney general in the antitrust division, discussed DOJ's ongoing automotive parts investigation in a Thomson Reuters article.  He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered.  ***I say biggest with***

*respect to the <u>impact</u> on U.S. businesses and <u>consumers</u>, and the number of companies and executives that are subject to the investigation*."  (emphasis added).

89.     On November 16, 2012, the DOJ announced that Hiroshi Yoshida pleaded guilty and agreed to pay a $20,000 criminal fine and serve 12 months and one day in a United States prison for his role in a conspiracy to fix prices and rig bids of Anti-Vibration Rubber Parts sold in the United States and elsewhere.  As part of his plea agreement, Mr. Yoshida also agreed to cooperate with the Department's ongoing investigation into price fixing and bid rigging in the automobile Anti-Vibration Rubber Parts industry.  Mr. Yoshida is an executive at YUSA Corporation, the wholly-owned Ohio subsidiary of Yamashita Rubber Co., Ltd., a Japanese automotive supplier.[1]

90.     The affidavit submitted in support of the criminal complaint filed against Mr. Yoshida (the "Affidavit") states that he conspired with employees of a company that "self-reported its anti-competitive activities to the DOJ and is cooperating with the investigation" and that "has applied for and has received conditional admission to the DOJ's leniency program, as well as a similar leniency program in Japan."  Affidavit at ¶ 9, *United States v. Yoshida*, No. 12-cr-00515 (N.D. Ohio June 15, 2012) ECF No. 1-2.  At a motion hearing in *Yoshida*, it was confirmed that the company in question is Tokai Rubber Industries, Ltd.[2]  *See*

─────────────────────

[1] The Information in *United States v. Yoshida*, No. 12-cr-00515 (N.D. Ohio), states that Mr. Yoshida is employed by "a corporation organized and existing under the laws of Japan with its principal place of business in Saitama, Japan, and did business in the United States through a subsidiary with a principal place of business in Washington Court House, Ohio."  Yamashita Rubber Co., Ltd., an automobile Anti-Vibration Rubber Parts manufacturer, is headquartered in Saitama, Japan, and its subsidiary, YUSA Corporation, is headquartered in Washington Court House, Ohio.  Additionally, in the August 20, 2012 Motion Hearing in *Yoshida*, Mr. Yoshida's counsel identified Mr. Yoshida's employer as "Usa," presumably referring to YUSA Corporation.  Transcript of Motion Hearing at 27:17-18, *United States v. Yoshida*, No. 12-cr-00515 (N.D. Ohio Aug. 16, 2012) ECF No. 19.

[2] While the transcript refers to Tokai Rubber **Company**, the affidavit submitted in support of the criminal complaint describes a company "based in Japan that produces anti-vibration rubber products" and "has a wholly-

*(continued)*

Transcript of Motion Hearing at 15:11-16:13, *United States v. Yoshida*, No. 12-cr-00515

(N.D. Ohio Aug. 16, 2012) ECF No. 19.

91.     According to the charge against Mr. Yoshida, his involvement in the

conspiracy began at least as early as October 2005 and continued until at least June 2011. Mr.

Yoshida and his co-conspirators carried out the conspiracy by agreeing, in meetings and

discussions, to allocate the supply of certain automobile Anti-Vibration Rubber Parts, to

exchange prices, to submit noncompetitive bids and to sell the parts at collusive and

noncompetitive prices in the United States and elsewhere.

92.     Specifically, Mr. Yoshida and his co-conspirators, among other things:

(a)     attended meetings and engaged in discussions in Japan concerning RFQs

and prices for automobile Anti-Vibration Rubber Parts sold in the United States and elsewhere;

(b)     agreed during those meetings and discussions to allocate between the

companies the supply of certain automobile Anti-Vibration Rubber Parts sold in the United

States and elsewhere;

(c)     agreed to exchange prices for certain automobile Anti-Vibration Rubber

Parts sold in the United States and elsewhere in accordance with the agreements reached;

(d)     exchanged prices for certain automobile Anti-Vibration Rubber Parts sold

in the United States and elsewhere in accordance with the agreements reached;

---

*(continued)*

owned U.S. subsidiary located in the Northern District of Ohio."  Affidavit at ¶ 9, *United States v. Yoshida*, No. 12-
cr-00515 (N.D. Ohio June 15, 2012) ECF No. 1-2.  Tokai Rubber **Industries**, Ltd. is a Japanese supplier of
automobile Anti-Vibration Rubber Parts with a subsidiary, DTR Industries, Inc., located in the Northern District of
Ohio.

(e)     agreed to submit higher bids for the supply of certain automobile Anti-Vibration Rubber Parts sold in the United States and elsewhere;

(f)     submitted higher bids so as not to undercut the other company's bids for the supply of certain automobile Anti-Vibration Rubber Parts sold in the United states and elsewhere in accordance with the agreements reached;

(g)     sold automobile Anti-Vibration Rubber Parts in the United States and elsewhere at collusive and noncompetitive prices; and

(h)     accepted payment for automobile Anti-Vibration Rubber Parts sold in the United States and elsewhere at collusive and noncompetitive prices.

93.     The Affidavit contains a summary of information provided by a Tokai employee[3] that is illustrative of the unlawful conduct engaged in by Mr. Yoshida and his co-conspirators:

> In late 2003 or early 2004 [this Tokai employee] discussed over the telephone with Yoshida their companies' price quotes to Honda for anti-vibration rubber parts for the 2006 model Honda Civic. They agreed not to lower their prices in response to requests from Honda, and not to lower their prices to obtain greater market share, unless they were able to provide to each other an engineering reason for the lower price. This market allocation and pricing agreement reduced price competition for 2006 Honda Civic parts sold in the United States to Honda by [Yamashita] and by [Tokai].
>
> In 2008, [this Tokai employee] met with Yoshida in Japan regarding their companies' planned responses to Honda's RFQ for anti-vibration rubber parts for the 2011 model Honda Civic. (The 2007 through 2010 models used the same parts as the 2006 model.) They again agreed not to lower their prices without an engineering reason, and agreed tat they would try to maintain their existing market shares for the Civic. Several months later, [this Tokai employee] and Yoshida exchanged their companies' approximate bid prices for each component over the telephone, and committed to submitting these prices to Honda. This

---

[3] In the Affidavit, this Tokai employee is referred to as "CW-1," Yamashita is redacted, and Tokai is referred to as "Company A."

market allocation and pricing agreement reduced price competition for 2011 Honda Civic parts sold in the United States to Honda by [Yamashita] and by [Tokai].

In 2009, [this Tokai Employee] had a discussion with Yoshida over the telephone regarding their companies' price quotes to Honda for anti-vibration rubber parts for the 2012 model Honda CR-V.  [This Tokai employee] and Yoshida again agreed to try to maintain their existing market shares.  To effectuate their agreement, they again shared their approximate bid prices with each other and committed to submitting those prices to Honda.  This market-allocation and pricing agreement reduced price competition for 2012 Honda CR-V parts sold in the United States to Honda by [Yamashita] and [Tokai].

Affidavit at ¶ 10, *United States v. Yoshida*, No. 12-cr-00515 (N.D. Ohio June 15, 2012) ECF No. 1-2.

94.     Further illustrative of the Defendants' unlawful conduct are e-mails reviewed

by the affiant, Special Agent Kevin Brown of the Federal Bureau of Investigation's Cleveland

Unit.  Special Agent Brown:

reviewed a translation of an-email sent by Hiroshi Yoshida to [this Tokai employee] on April 24, 2009.  In the body of the e-mail, Yoshida states that he is informing [this Tokai employee] of [Yamashita's] response, and expresses his willingness to resubmit prices for two parts for which instructions had been received from [this Tokai employee], but where lower prices were submitted due to poor communications. . . .

reviewed a translation of the e-mail sent by [this Tokai employee] in response to Yoshida's e-mail of April 24, 2009.  In the body of the e-mail, which is also dated April 24, 2009, [this Tokai employee] asks Yoshida if the price could be raised for one of the parts. . . .

reviewed a translation of an e-mail by [this Tokai employee] forwarding his/her e-mail in response to Yoshida to, among others, an employee of [Yamashita] who at the time worked at its office in the Northern District of Ohio.  Attached to the e-mail, also dated April 24, 2009, is a chart containing prices identified as [Yamashita's] for various anti-vibration rubber parts for the 2011 Honda Civic, including the price of the part [this Tokai employee] asked Yoshida to raise.  In the body of the e-mail, [this Tokai employee] informs the recipients of the pricing request made to Yoshida with respect to that part, and asks that [Tokai] submit a slightly lower price for another part that is included in the chart.

*Id.* at ¶ 12.

95.     The Affidavit also states that Yoshida, in a telephone call with a separate Tokai employee, "described the agreement for the Honda Civic as 'Let's not stick out our hands to take each other's business'" and "further described the implementation of this agreement as representatives of the companies telling each other at what price they would submit bids, and then requesting that the other submit a higher price, so that the higher bidder would not win the business." *Id.* at ¶ 11.

96.     Furthermore, at a May 31, 2012 interview, Yoshida admitted that "regarding the 2011 Honda Civic, there were discussions and an agreement between the companies not to reduce price quotes for anti-vibration rubber parts in the absence of a valid design change or engineering change" and "they agreed not to submit prices for the 2011 Honda Civic that would be strange, drastic, or unexplainable." *Id.* at ¶ 13.

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities that indirectly purchased or leased in the United States, during the Class Period, Anti-Vibration Rubber Parts, for personal use and not for resale, including the purchase of Anti-Vibration Rubber Parts as a stand-alone replacement product or as a component of a new motor vehicle purchased or leased from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

98.     Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the common law of unjust enrichment and the antitrust, unfair competition, and consumer protection laws of the states whose laws are identified below (the "Indirect Purchaser States").

These claims are brought by Plaintiffs on behalf of themselves and persons and entities in the Indirect Purchaser States as follows (the "Damages Class"):

> All persons and entities that indirectly purchased or leased in the Indirect Purchaser States, during the Class Period, Anti-Vibration Rubber Parts, for personal use and not for resale, including the purchase of Anti-Vibration Rubber Parts as a stand-alone replacement product or as a component of a new motor vehicle purchased or leased from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

99.     The Nationwide Class and the Damages Class are referred to herein as the "Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Anti-Vibration Rubber Parts directly or for resale.

100.     While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

101.     Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)     Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Anti-Vibration Rubber Parts sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

23

(d)      Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)      Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law,  as alleged in the Second and Third Claims for Relief;

(f)      Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)      Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)      The effect of the alleged conspiracy on the prices of Anti-Vibration Rubber Parts sold in the United States during the Class Period;

(i)      Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(j)      The appropriate injunctive and related equitable relief for the Nationwide Class; and

(k)      The appropriate class-wide measure of damages for the Damages Class.

102.    Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they

paid artificially inflated prices for Anti-Vibration Rubber Parts purchased indirectly from Defendants or their co-conspirators.

103.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

104.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

105.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

106.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

107.    Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to Anti-Vibration Rubber Parts;

(b)     The prices of Anti-Vibration Rubber Parts have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)     Indirect purchasers of Anti-Vibration Rubber Parts have been deprived of free and open competition.

108.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Anti-Vibration Rubber Parts.

109.    The markets for Anti-Vibration Rubber Parts and vehicles are inextricably linked and intertwined because the market for Anti-Vibration Rubber Parts exists to serve the vehicle market.  Without the vehicles, the Anti-Vibration Rubber Parts have little to no value because they have no independent utility.  Indeed, the demand for vehicles creates the demand for Anti-Vibration Rubber Parts.

110.    Anti-Vibration Rubber Parts are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle.  As a result, Anti-Vibration Rubber Parts follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Anti-Vibration Rubber Parts can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

111.    By reason of the violations of the antitrust law alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Anti-Vibration Rubber Parts than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered

damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.     The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover Their Claims

112.    Plaintiffs repeat and reallege the allegations set forth above.

113.    Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) the United States filed a criminal complaint against Mr. Yoshida in June 2011.

114.    Plaintiffs and the members of the Classes are purchasers who purchased or leased automobiles or purchased Anti-Vibration Rubber Parts to replace or repair damaged or defective Anti-Vibration Rubber Parts in their automobiles.  They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of the government investigations began in June 2011.

115.    No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the public announcements of the government investigations beginning in June 2011 that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Anti-Vibration Rubber Parts.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

116.    For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

**B.      Fraudulent Concealment Tolled the Statute of Limitations**

117.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the United States filed a criminal complaint against Mr. Yoshida in June 2011.

118.    Because Defendants' agreements, understandings and conspiracies were kept secret until June 2011, Plaintiffs and members of the Classes before that time were unaware of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for Anti-Vibration Rubber Parts throughout the United States during the Class Period.

119.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

120.    By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing. Anti-Vibration Rubber Parts are not exempt from antitrust regulation, and thus, before June 2011, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Anti-Vibration Rubber Parts prices before June 2011.

121.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

122.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until June 2011, when reports of the investigations into anticompetitive conduct concerning Anti-Vibration Rubber Parts were first publicly disseminated.

123.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

124.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

125.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

126.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers,

agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

127.    At least as early as October 2005, and continuing until at least June 2011, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Anti-Vibration Rubber Parts, thereby creating anticompetitive effects.

128.    The anticompetitive acts were intentionally directed at the United States market for Anti-Vibration Rubber Parts and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Anti-Vibration Rubber Parts throughout the United States.

129.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Anti-Vibration Rubber Parts.

130.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Anti-Vibration Rubber Parts have been harmed by being forced to pay inflated, supracompetitive prices for Anti-Vibration Rubber Parts.

131.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

132.    Defendants' conspiracy had the following effects, among others:

(a)      Price competition in the market for Anti-Vibration Rubber Parts has been restrained, suppressed, and/or eliminated in the United States;

(b)      Prices for Anti-Vibration Rubber Parts sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)      Plaintiffs and members of the Nationwide Class who purchased Anti-Vibration Rubber Parts indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

133.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Anti-Vibration Rubber Parts purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

134.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

135.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

136.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

137.    From as early as October 2005 until at least June 2011, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Anti-Vibration Rubber Parts in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

138.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for Anti-Vibration Rubber Parts and to allocate customers for Anti-Vibration Rubber Parts in the United States.

139.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Anti-Vibration Rubber Parts at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Anti-Vibration Rubber Parts sold in the United States;

(b)    allocating customers and markets for Anti-Vibration Rubber Parts in the United States in furtherance of their agreements; and

(c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

140.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Anti-Vibration Rubber Parts.

141.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

142.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

143.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Anti-Vibration Rubber Parts at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Anti-Vibration Rubber Parts.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:  (1) Fixing, raising, stabilizing, and pegging the price of Anti-Vibration Rubber Parts; and (2) Allocating among themselves the production of Anti-Vibration Rubber Parts.

(d)     The combination and conspiracy alleged herein has had, inter alia, the following effects:  (1) Price competition in the sale of Anti-Vibration Rubber Parts has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Anti-Vibration Rubber Parts sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Anti-Vibration Rubber Parts directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Anti-Vibration Rubber Parts than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720

of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

144.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

145.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*.

146.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber

Parts.

        (b)      During the Class Period, Defendants' illegal conduct substantially affected

Kansas commerce.

        (c)      As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

        (d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Plaintiffs and

members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-

101, *et seq.*

      147.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

        (a)      Defendants' combinations or conspiracies had the following effects:  (1)

Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated

throughout Maine; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and

stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber

Parts.

        (b)      During the Class Period, Defendants' illegal conduct substantially affected

Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

148.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

149.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

150.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

151.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

152.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

153.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.*  Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

154.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

155.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout New York; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts when they purchased vehicles containing Anti-Vibration Rubber Parts, or purchased products that were otherwise of lower quality, than would have been absent the conspirators illegal acts, or were unable to purchase products that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a per se violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

156.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated

throughout North Carolina; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

157.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

158.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

159.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

160.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

161.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Utah; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and

stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

162.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

163.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq*.

164.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

165.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiffs and members of the Damages Class have paid

more for Anti-Vibration Rubber Parts than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

166.    In addition, Defendants have profited significantly from the aforesaid conspiracy.   Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

167.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

168.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

169.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

170.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

(a)    During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq*. of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)      This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)      The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d)      Defendants' acts, omissions, misrepresentations, practices, an non-disclosures, as described above, whether or not in violation of Section 16720, *et seq*., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)      Defendants' acts or practices are unfair to purchasers of Anti-Vibration Rubber Parts (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)      Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Anti-Vibration Rubber Parts (or vehicles containing them).  Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

171.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels,

the prices at which Anti-Vibration Rubber Parts were sold, distributed or obtained in the District of Columbia.

(b)     The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.

(c)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels  throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(d)     As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.* , and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

172.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Florida; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were

deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

173.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

174.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)      Plaintiffs and the Damages Class purchased Anti-Vibration Rubber Parts for personal, family, or household purposes.

(b)      Defendants engaged in the conduct described herein in connection with the sale of Anti-Vibration Rubber Parts in trade or commerce in a market that includes Missouri.

(c)      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Anti-Vibration Rubber Parts were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d)      Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Anti-Vibration Rubber Parts.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Anti-Vibration Rubber Parts they purchased.

(e)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Wire Harness Systems.

(f)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(h)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

175.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*

(a)    Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Montana; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

176.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Anti-Vibration Rubber Parts was sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Anti-Vibration Rubber Parts as set forth in N.M.S.A., § 57-12-2E.

(c)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

177.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of  N.Y. Gen. Bus. Law § 349, *et seq.*

(a)      Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Anti-Vibration Rubber Parts were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)      Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout New York; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(d)      During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

(e)      During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Anti-Vibration Rubber Parts in New York.

(f)      Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

178.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Anti-Vibration Rubber Parts was sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(d)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(e)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Anti-Vibration Rubber Parts in North Carolina.

(f)     Plaintiffs and members of the Damages Class seek actual damages for
their injuries caused by these violations in an amount to be determined at trial and are threatened
with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or
practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiffs
and members of the Damages Class seek all relief available under that statute.

179.     Defendants have engaged in unfair competition or unfair, unconscionable, or
deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and
Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)     Plaintiffs and members of the Damages Class purchased Anti-Vibration
Rubber Parts for personal, family, or household purposes.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce
in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at
artificial and non-competitive levels, the prices at which Anti-Vibration Rubber Parts were sold,
distributed, or obtained in Rhode Island.

(c)     Defendants deliberately failed to disclose material facts to Plaintiffs and
members of the Damages Class concerning Defendants' unlawful activities and artificially
inflated prices for Anti-Vibration Rubber Parts. Defendants owed a duty to disclose such facts,
and considering the relative lack of sophistication of the average, non-business purchaser,
Defendants breached that duty by their silence. Defendants misrepresented to all purchasers
during the Class Period that Defendants' Anti-Vibration Rubber Parts prices were competitive
and fair.

(d)     Defendants' unlawful conduct had the following effects:  (1) Anti-
Vibration Rubber Parts price  competition was restrained, suppressed, and eliminated throughout

Rhode Island; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and

stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber

Parts.

      (e)     As a direct and proximate result of the Defendants' violations of law,

Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property

as a result of Defendants' use or employment of unconscionable and deceptive commercial

practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct,

as described herein.

      (f)     Defendants' deception, including their omissions concerning the price of

Anti-Vibration Rubber Parts, likely misled all purchasers acting reasonably under the

circumstances to believe that they were purchasing Anti-Vibration Rubber Parts at prices born by

a free and fair market.  Defendants'  omissions constitute information important to Plaintiffs and

members of the Damages Class as they related to the cost of Anti-Vibration Rubber Parts they

purchased.

      (g)     Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly,

Plaintiffs and members of the Damages Class seek all relief available under that statute.

     180.    Defendants have engaged in unfair competition or unfair, unconscionable, or

 deceptive acts or practices in violation of  9 Vermont § 2451, *et seq.*

      (a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce

in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at

artificial and non-competitive levels, the prices at which Anti-Vibration Rubber Parts were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Anti-Vibration Rubber Parts.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Anti-Vibration Rubber Parts prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects:  (1) Anti-Vibration Rubber Parts price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Anti-Vibration Rubber Parts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Anti-Vibration Rubber Parts.

(d)     As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their omissions concerning the price of Anti-Vibration Rubber Parts, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Anti-Vibration Rubber Parts at prices born by

a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes

unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available

under that statute.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

181.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

182.    As a result of their unlawful conduct described above, Defendants have and

will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt

of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Anti-Vibration

Rubber Parts.

183.    Defendants have benefited from their unlawful acts and it would be inequitable

for Defendants to be permitted to retain any of the ill-gotten gains resulting from the

overpayments made by Plaintiffs or the members of the Damages Class for Anti-Vibration

Rubber Parts.

184.    Plaintiffs and the members of the Damages Class are entitled to the amount of

Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

Plaintiffs and the members of the Damages Class are entitled to the establishment of a

constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of

the Damages Class may make claims on a pro rata basis.

<u>**PRAYER FOR RELIEF**</u>

Accordingly, Plaintiffs respectfully request that:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.     That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)     A *per se* violation of Section 1 of the Sherman Act;

(c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants as set forth herein.

C.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any

manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

DATED:  February 27, 2013                    **THE MILLER LAW FIRM, P.C.**


By  /s/ E. Powell Miller
E. Powell Miller (P39487)
Adam T. Schnatz (P72049)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
ats@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI
L.L.P**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiffs Classes*

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

DATED:  February 27, 2013                          **THE MILLER LAW FIRM, P.C.**


By  /s/ E. Powell Miller
E. Powell Miller (P39487)
Adam T. Schnatz (P72049)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
ats@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes*

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI
L.L.P**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiffs Classes*